New-London,
July, 1836.

Bailey
v.
Taylor

11   531
71   254

## BAILEY *against* TAYLOR and another.

Where there is an alteration in an instrument under which a party derives his title, apparently against the interest of that party, the law does not so far presume that it was improperly made, as to throw upon him the burden of accounting for it; but the jury are, from all the circumstances before them, to determine, whether it was made before or after the execution of the instrument; and if after, whether it was with, or without the assent of the adverse party; and consequently, whether it rendered the instrument invalid or not.

THIS was an action of *assumpsit* on a promissory note, by which the defendants jointly and severally promised to pay the plaintiff, or bearer, on demand, for value received, the sum of 500 dollars, with interest. *Taylor* was defaulted; and *Avery*, the other defendant, pleaded *non assumpsit.*

The cause was tried at *New-London, September* term, 1835, before *Waite,* J.

The plaintiff produced the note and proved the signatures of the defendants; and no other evidence was offered, by either party. The defendant, *Avery,* claimed, that upon inspection of the note, it appeared, that it had been altered from 600 to 500 dollars; and claimed, that this had been done without his knowledge or authority; and that if such alteration had been made, the note was void, unless it was shown, by the plaintiff, that it was made before execution, or afterwards, with the defendant's assent,—the burden of proof lying upon the plaintiff; and the defendant prayed the judge so to instruct the jury. The plaintiff claimed, that there had been no alteration of the note; but if there had been, that the note was not thereby rendered void, unless the defendant showed that it was improperly made. The judge charged the jury, that if such an alteration was made in the note as the defendant claimed, after the delivery of it, without the knowledge or consent of the defendant, their verdict must be in his favour; but gave no instruction as to the claims of the parties respectively upon whom the burden of proof lay.

The jury returned a verdict for the plaintiff; and the defendant moved for a new trial, for a mis-direction.

*Brainard* and *Strong,* in support of the motion, contended, 1. That the note in suit appearing to have been altered, it was

the duty of the plaintiff, in whose possession it was, to prove the alteration made with the consent of the defendant, or before its execution. In the first place, this is necessary for the security of the parties to negotiable paper. The maker and indorser of such paper cannot ordinarily prove, that it was not altered when they made or indorsed it. Secondly, no inconvenience can result from requiring the holder to produce this proof; for no person is obliged to receive a paper, in which an erasure or interlineation appears; or if he receive such paper, he may take evidence of its state and condition when received, and ascertain whether the alteration was made before its execution by the parties to whom he looks. Thirdly, this rule is established, by the elementary writers on evidence, and by adjudicated cases. 1 *Saund. Ev. & Pl.* 78. *Roscoe* on *Ev.* 148. *Henman* v. *Dickinson,* 5 *Bing.* 183. (15 *Serg. & Lowb.* 409.) *Bishop* v. *Chambre,* 3 *Carr. & Payne,* 55. (14 *Serg. & Lowb.* 207.) *Taylor* v. *Moseley,* 6 *Carr. & Payne,* 273. (25 *Serg. & Lowb.* 393.) cor. Lord *Lyndhurst,* Ch. B.

2. That it makes no difference that the alteration is *apparently* beneficial to the party taking the exception. In the first place, it is not his contract, as truly, if the amount of his note is reduced, or its payment postponed, as if the amount were increased, or the time of payment accelerated. *Outhwaite & al.* v. *Lentley,* 4 *Campb.* 179. Secondly, he may be a surety only, and his indemnity will not meet his case. Thirdly, he may have a receipt or discharge, or other evidence of payment, which would meet the note as made, but not as altered. So also as to any other defence, *e. g.* usury, duress, gambling, &c.

*Goddard* and *Isham,* contra, contended, 1. That it was too late to raise the question on whom the burden of proof devolved, after a verdict in favour of the plaintiff, negating any alteration after the execution and delivery of the note. The facts, whether any alteration, and if so, when made, were, with perfect propriety, submitted to the jury; and they have found these facts as claimed by the plaintiff. *Bishop* v. *Chambre,* 3 *Carr. & Payne* 55. *The Cumberland Bank* v. *Hall,* 1 *Hals.* 215. *Vanhorne's* lessee v. *Dorrance,* 2 *Dal.* 306.

2. That if the question can be raised after verdict, it was incumbent on the defendant, (at any rate, not on the plaintiff,)

to prove, that the alteration was made after the negotiation of the note. *Johnson* & al. v. The Duke of *Marlborough*, 2 *Stark. Ca.* 313. 2 *Stark. Ev.* 296. 476. n. 4. 12 *Vin. Abr.* 58. *Prevost* v. *Gratz* & al. 1 *Pet.* 369.

New-London,
July, 1836.

Bailey
v.
Taylor.

WILLIAMS, Ch. J. The defendant does not complain, that the question as to the alteration of the note, and the time of that alteration, was submitted to the jury; but he insists, that if they found such alteration, the note must be found void, unless the plaintiff accounted satisfactorily for such alteration: in other words, that every note or other written instrument, in which an erasure or alteration appears, is void, unless the plaintiff can and does produce evidence to show, that such erasure or alteration was made under such circumstances as not to impair the instrument. The principle is one of great importance, as it may affect much of the ordinary business among us. On the one hand, it is said, that this rule is necessary, as a safeguard against the alteration of instruments, which must be in the hands of a party whose interest might lead him to tamper with them, unless they were secured by heavy penalties. On the other hand, it is said, that it would impose an unnecessary incumbrance upon ordinary transactions, and make void many instruments, which were honestly made, for want of preserving such proof. In ancient times, when few could write, and when the business which required writing, was done by those who were skilful, such a rule as the defendant claims, might not have been greatly felt in its operation; and we find, by the ancient decisions, where a deed was suspicious, by rasure or avulsion of the seal, the party, on oyer of the deed, might demur, and put it into the judgment of court, or plead *non est factum.* *Co. Litt.* 35. n. 7. The court might thus decide, upon inspection of a deed, that it was void. Such a principle, however, could not long be supported; and of latter times, says Lord *Coke,* the judges have left it to the jurors to try whether the rasure or interlining was before the delivery. *Leyfield's* case, 10 *Rep.* 92. *Co. Litt.* 225. a. 4 *Term Rep.* 338. 2 *Dal.* 306. 1 *Pet.* 560. 2 *N. Hamp. Rep.* 543.

The defendant does not claim, in face of these authorities, that the question was not properly left to the jury, but that it should have been accompanied with such instructions as would have left them nothing to do. The plaintiff claims, that it is

*New-London,*
*July, 1836.*

Bailey
*v.*
Taylor.

too late to make this objection, as the jury were instructed, that if the note was altered after delivery, and without the knowledge or authority of the defendant, it was void ; and as they have found that it was not void, they have found such facts as leave the plaintiff entitled to a verdict, at all events. But if they found such facts in consequence of an omission of the court to instruct them on a question of evidence, upon which they ought to have given an opinion, it is apparent, that the result may be incorrect. The question, therefore, fairly arises, whether the burden of proof regarding this alteration, lay upon the plaintiff.

There being no proof but that the note was in the hand-writing of the signer, the court cannot know whether the supposed alteration was in the hand-writing of the plaintiff or defendant, or any different hand from either of them, or that the plaintiff could gain any thing thereby, or had any motive in proving such alteration. It would rather seem as if the interest of the defendants must have been promoted, rather than the plaintiff's, by reducing the sum to be paid, from 600 to 500 dollars. The defendants' claim, then, is this ; that such is the inflexible rule of law, that whenever an instrument in writing is altered in a material part, by rasure or interlineation, however much to the apparent injury of the person claiming under it, that instrument must be considered void in his hands, unless he can show how and when that blemish was made. We have already alluded to the ancient law regarding deeds, and the change which was made in it, in the days of Lord *Coke.* And although in *Leyfield's* case, it is said, that the jury are to try whether the rasure or interlining was before the delivery, yet it would seem as if they must try all the other questions of fact regarding them ; and such seems to be the practice. 2 *Wend.* 555. & seq. And it was decided, at an early period, that an interlineation, if nothing appears against it, will be presumed to be made at the time of making the deed, and not after. *Trowell* v. *Castle,* 1 *Keb.* 22. If it be said, that the authority of *Keble* is not great, it may be added, that this case is cited as law, in *Vin. Abr. vol.* 12. *p.* 58. and *vol.* 13. *p.* 41., and also in the notes to *Co. Litt.* 225. ; and it is not to be believed, that the editor of the last-mentioned work would cite it, without comment, if it was doubted. So too, in a more recent case of a deed of trust, where the power was extended, by an

interlineation of these words.—"to grant, sell and demise, or." New-London, July, 1836.

Bailey
v.
Taylor.

Lord Ch. B. *Reynolds* says, "there is no proof when these words were interlined, or that they were inserted by the direction of Mr. *Fowler : Therefore, I must look upon them as if they had been originally incorporated in the body of the deed."* *Fitzgerald* & al. v. Lord *Fauconberg, Fitzg.* 207. 213.   13 *Vin. Abr.* 41. 4 *Cruise's Dig.* 338. *tit.* 32. *c.* 26. *s.* 10. 11.    And the last-mentioned author adds, that the modern practice is, when any alteration, interlineation or rasure is made in a deed before it is executed, to take notice of it in the attestation : he might have added, according to the advice of Lord *Coke* to devisors, in *Butler* and *Baker's* case, 3 *Co.* 36.

It has been supposed, that the practice of requiring proof of the execution of an ancient deed, which had in it an erasure or alteration, was inconsistent with the above cited authorities ; and *Bul. N. P.* is cited.   It is there said, that in an ancient deed, if there be any blemish in the deed, by rasure or interlineation, the deed ought to be proved, though it were above thirty years old, by the witnesses, if living, and if they be dead, by proving the hand of the witnesses, or at least one of them, and also the hand of the party, in order to encounter the presumption arising from the blemishes in the deed.    *Bul. N. P.* 255. This is almost copied from *Gilb. Evid.* 104. (*Lofft's* ed.)   But surely it cannot mean, that an account must be given of such blemishes ; for, proving the hand-writing of the witnesses, could not do that ; and yet the authority does not intimate, that when this proof is made, with proof of the hand-writing of the party, the deed would not be valid.

In our own country, the weight of authority, as it respects deeds, is in accordance with these cases.   In *Speake* v. *The United States,* 9 *Cranch* 37., *Story,* J., says, that the fact that there is an erasure or interlineation apparent on the face of a deed, does not, of itself, avoid it.   To produce that effect, it must be shown to have been done under circumstances that the law does not warrant.   And in *Coulson* v. *Walton,* 9 *Pet.* 78., it is said, no one having an interest in this bond could have any motive to alter it, as it seems to have been done. The bond has been in possession of those who held adversely to it ; so that its destruction would have advanced their interest.   It is fair to presume, that if the alteration was made by design, it could not have been made, by any one claiming

under the bond.    And in a question upon this point, in *Mary-land*, where it appeared upon the deed, that the names of the attesting witnesses were erased, the court held, that it was incumbent upon the party who would avoid the deed, by its erasure, to prove, that such erasure was made after the execution and delivery of the deed, and that they were not bound to presume, that the erasure was made by the grantee, or others claiming under him, after the execution of the deed. *Wickes's* lessee v. *Caulk*, 5 *Harr. & Johns.* 41.    Judge *Swift*, in his *System*, speaking of the same practice here, as to noting the alteration before the attestation, that *Cruise* mentions, observes : " But now, whether such *memorandum* be made or not, a mere erasure or interlineation shall not itself be presumed to be done after the execution of the deed, so as to vitiate it, but with the whole of the deed, depends upon the proof of its validity, to be submitted to the consideration of the jury.    1 *Sw. Syst.* 310.    It is true, that *McKean*, Ch. J., in a case before him, remarks, that where there is an alteration in a deed, it is not to be presumed it was made before its execution : the presumption is to the contrary, unless otherwise proved.    1 *Dal.* 67.

In the case of *Jackson* d. *Gibbs* & al. v. *Osborn*, 2 *Wend.* 555., the judge at the circuit held the doctrine claimed by the plaintiff in this case.    That decision, however, was reversed, by the supreme court of *New-York*, who held, that such an erasure or interlineation was a suspicious circumstance, that required some explanation on the part of the plaintiff; but whether it was satisfactory, was for the jury to determine.

In *Prevost* v. *Gratz*, 1 *Pet. C. C. Rep.* 369., where there were material alterations in an account, in the hand-writing of *Gratz*, and in his possession, making it to differ from the copy in the hands of the other party, *Washington*, J. says, these circumstances would be sufficient, upon a plea of *non est factum* to a deed, to avoid it.    The presumption, in such a case, is, that the alteration was made after the execution of the deed ; and the same presumption arises in reference to a settled account.

In the first of these cases, it is merely a passing remark of the judge ; in the second, it is one of the points adjudged, in the case, but no authority is cited, except *Bul. N. P.* and *Phil. Evid.*, the first of which has been noticed, and the se-

New-London,
July, 1836.

Bailey
v.
Taylor.

cond is little more than a copy of it. In the last case, upon the circumstances disclosed, it was certainly correct to say, that a deed in the hand-writing of the grantee, differing from another in the hands of the opposite party, by an interlineation in the hands of him who was to profit thereby, would be void, unless these circumstances were explained, not on account of the interlineation merely, but on account of the alteration, coupled with the other circumstances.

On the whole, were the instrument in question a deed, we could not hesitate as to the result.

The next question is, whether the alteration in a note is to have effect greater than a similar one would have in a deed. So late as the year 1791, in the case of *Masters* v. *Miller*, 4 *Term Rep.* 320., it was much litigated, whether the reverse of this was true ; that is, whether an alteration, which would make void a deed, would also vitiate a bill of exchange. It was decided, that it would. The argument of the judges who supported the decision, was drawn from the case of deeds ; and all went to show, that the principle was the same in writings under seal and not under seal. And *Ashhurst*, J., though he thinks that if there was a difference, the objection should prevail with greater force in negotiable instruments, admits there is no difference.

But it is contended, that the late *English* cases support the principle claimed by the defendants.

*Johnson* & al. v. Duke of *Marlborough*, 2 *Stark. Rep.* 313. That was a bill of exchange, the date of which was altered, by the defendant himself ; and the question was, whether this alteration was made before the indorsement. And *Abbott*, J. said, in answer to the claim that he would presume it done before the indorsement, that he could not presume one way or the other ; and that unless it could be proved, that the alteration was prior to the acceptance, the bill was void *for want of a new stamp.* The only question here, arose under the stamp act ; for upon no common law principle, could the defendant destroy his acceptance, by his own act.

This case was followed by *Bishop* v. *Chambre,* 3 *Carr. & Payne,* 55. (14 *Serg. & Lowb.* 207.) in which the note was dated 27th of *May,* 1824, and Lord *Tenterden* remarked, that the word *May,* appeared to be in a different hand from the rest of the note, and a portion of the paper had been cut off ; and

then remarked, when a note appears to have undergone alteration, the party suing upon it, must account for that. This case was argued, by the defendant's counsel, upon the question, whether the word *May*, was added after the note was in the hands of the plaintiff; and that was the question submitted, by the judge, to the jury; and they were told, that if after a note was delivered to the party, who is to derive a benefit from it, it is altered, it is rendered invalid; and the judge, in that case, and the whole court afterwards, as well as before, held, that a note once in the hands of the holder, as a perfect instrument, cannot be altered, even with the consent of all parties, except to correct a mistake, because it would require a new stamp. See *Bathe* v. *Taylor*, 15 *East*, 412.

The next case is that of *Henman* v. *Dickinson*, 5 *Bing.* 183. (15 *Serg. & Lowb.* 409.) There, a bill was drawn by one *Potter*, on the 29th of *February*, for 49*l.* 17*s.* 6*d.*, and accepted by the defendant. The wife of *Potter* had testified, that it was in fact drawn and accepted, on the 22d of *February*, for 40*l.* 17*s.* 6*d.*; and before it was indorsed, *Potter* altered it. Two questions were made before the court of *Common Pleas;* whether *Potter's* wife could be a witness, and upon whom lay the burden of the proof as to the alteration of the bill. The first point was not decided. On the second, *Best,* Ch. J., said, but we are of opinion, that where an alteration appears upon the face of the bill, the party producing it, must show, that it was made with consent of parties, or before the issuing of the bill. And *Park*, J., says, where the plaintiff sues on an instrument, which has manifestly been altered, it is for him to show, that the alteration was not improperly made. I am sure this has been decided; and good sense points out, that it ought to be so, because the defendant can have no means of knowing the circumstances of a subsequent alteration. The rest of the court concurred. In this case, it is true, that nothing is said about the stamp laws; and the general position seems applicable to all written instruments. But if the law respecting deeds is such as we suppose, is it to be believed, that the whole doctrine is to be changed, without a single reference to the ancient decisions regarding deeds, or any authority cited? Or can we suppose, after what fell from the court in *Masters* v. *Miller*, that the court mean to make a distinction between notes and deeds, and yet that such a distinction should not be

New.London,
July, 1836.

Bailey
v.
Taylor.

attended to, in this case? Besides, five years after this decision, a discussion arose before Lord *Lyndhurst*, which would have been quite unnecessary, if the general principle is settled, in the last case, that is supposed.

*Taylor* v. *Moseley*, 6 *Carr. & Payne*, 273. (25 *Serg. & Lowb.* 393.) That was an action upon a bill, drawn by *Thorn* upon the defendant, in favour of one *Knight*, and accepted by the defendant. It was proved, that *Thorn* took words out of writings, by a chemical process; that the words, "125*l.*," the sum for which the bill was drawn, were compressed in too small a space; that the paper there was rather darker, &c. When indorsed, it was in the same state as at the trial. It was accepted, by the defendant, "payable at *Cockburn*;" but the last words were not in the hand-writing of the defendant. For the defendant, *Henman* v. *Dickinson* was cited as in point. The plaintiff's counsel say nothing about that case, but in face of it, insist, that the other side must show, that the alteration was made after the acceptance. The judge tells him, he must make out the case; he still insists upon that point; and his Lordship says, the question is, whether the defendant was party to such a contract. The better way will be to reserve the point, and not stop the cause. According to the case of *Bishop* v. *Chambre*, it seems to be a question for the jury, *if the plaintiff gives no account of the alteration, whether it was made after the note had become a perfect instrument in the hands of the payee.* He then submits to the jury, whether from the circumstances attending the bill, there was not an alteration; and if so, whether it was since the acceptance: if it was, he says, it was not the defendant's contract. He then goes on, and reads Lord *Tenterden's* opinion, that it lay on the plaintiff to account for the suspicious form and obvious alteration of the note; and then leaves it to the jury, whether the alteration was after the acceptance. He says not a syllable about the case of *Henman* v. *Dickinson.* Had he recognised it as law, he would only have said to the jury, as the plaintiff has failed to account for this alteration, your verdict must be for the defendant; instead of which, he leaves it to them to find, even though the plaintiff has not accounted for it, whether it was made before or after acceptance. Such is Lord *Lyndhurst's* construction of the law, subsequent to that decision. If, then, the case in the *Common Pleas* does import

all that is claimed, it would seem not to be recognised to that extent, by any case before or after it. We do not, then, feel bound by it.

In *New-Hampshire.* The case of *Bowers* v. *Jewell*, 2 *N. Hamp.* 543., was an action upon a note, altered in its date, from 1809 to 1819. There, *Woodbury*, J. says : " This alteration was made after delivery ; and the note being under the plaintiff's controul, it must be presumed to have been done by him or his direction." He then goes on to say, that " the intent must be fraudulent ; it must be done with an eye to gain an advantage ; and that cannot be the case, if the alteration makes the sum less, or gives longer time of payment ; and whether the alteration is fraudulent, should be submitted to the jury." Without inquiring how far these rules are conformable to our law, it is enough to say, that if adopted, they would prevent a new trial ; as it cannot be claimed, the alteration could have been made by the plaintiff with an eye to his advantage, or for fraudulent purposes.

But in *New-Jersey,* in the case of *The President and Directors of the Cumberland Bank* v. *Hall*, 1 *Hals.* 215., the question before us was fully discussed, by counsel. That was an action by the indorsee against the maker of a note. *Hall* made a note payable to *C. Acton* and *H. Thompson*, or order, which was by them indorsed, but the words, *H. Thompson*, were erased, so that it read payable to *C. Acton*, or *their* order. The judge at the circuit, charged the jury, that the plaintiff was bound to account for this alteration ; and unless it was shown to have been done before the execution of the note, the law presumed it was done afterwards. Another question arose in the case, and the judgment was reversed. The opinion of the court is not given ; but in the marginal note, the reporter states these as the points decided : " 1. The law does not presume that an alteration apparent on the face of a note, was made after its execution. 2. But whether the alteration was after or before the execution of the note, appears to be a question for the jury to decide."

And in *Nichols* v. *Johnson*, 10 *Conn. Rep.* 198., where an alteration was made on the *memorandum* book of an auction sale, by adding a date, Judge *Church*, in giving the opinion of the court, says, " it is not to be presumed, the alteration was

made by the plaintiff, as there were no facts disclosed from which such presumption can arise."

The result to which we have arrived, is, that where there is an erasure or alteration in an instrument under which a party derives his title, and the adverse party claims, that such erasure or alteration was improperly made, the jury are, from all the circumstances before them, to determine, whether the instrument is thereby rendered invalid. Circumstances may be such as may require this explanation on the part of the plaintiff; or, on the other hand, may arise where it would be absurd to require it. In the present case, it is claimed, there is a legal presumption, which requires the jury to believe, that the plaintiff altered this note after its execution, and without the consent of the opposite party, not that he might receive more upon it, but that he might be entitled to 100 dollars less. Such a presumption, in face of every motive, we are entirely satisfied, no rule of law requires ; and the charge was submitted to the jury precisely as it should have been. Of course, there ought not to be a new trial.

In this opinion the other Judges concurred, except CHURCH, J., who was absent.

*New trial not to be granted.*