Den ex dem. Farlee v. Farlee.

---

### DEN EX DEM FARLEE v. FARLEE.

1. Whether a deed duly executed and attested has been delivered, is a matter *in pais*, to be decided by a jury; and is not *conclusively* settled by the fact that the deed is found in possession of the grantee, or by the certificate of acknowledgment in the usual form.

2. A deed being found in hands of grantee is *prima facie* evidence of delivery, but evidence to show that grantee obtained it surreptitiously, is admissible to rebut such presumption.

3. After evidence of admissions of grantor, from which delivery of a deed might be inferred by a jury, it is competent to shew that grantor was subsequently *in fact* in possession of it, and deposited it with a third person, subject to his control; and the directions of the grantor to the depositary at the time, are also competent as part of *that transaction.*

4. A person producing and claiming under a deed, is not bound to account for an *apparent* alteration not noted, where the alteration is evidently against the interest of the party producing the deed.

This was an action of ejectment brought in this court, and tried before Justice RANDOLPH at the Hunterdon Circuit in August Term, 1845. At the Circuit a verdict was found for the plaintiff; at the coming in of the postea, a rule was granted on application of the defendant, to shew cause why the verdict should not be set aside and a new trial granted, on the ground that the Circuit Judge had erred at the trial in the admission and rejection of evidence, and not charging to the jury upon the law of the case as required by the defendant. The facts of the case appear in the opinions of the Judges.

The argument of the rule to shew cause was had before WHITEHEAD, CARPENTER, and RANDOLPH, JJ.

*Vroom,* for defendant in support of the rule.

*W. Halsted,* for plaintiff against it.

WHITEHEAD, J. The lessor of the plaintiff claims title to the premises in question under a deed from his father, Mindart Farlee, bearing date in August, 1818, acknowledged in the same month before a commissioner for taking the acknowledgment and proof of deeds. It purports on its face to be given to the lessor and his brother Anthony M. Farlee, in consideration of one dollar, and of natural love and affection, &c.—to have and to hold the premises (the homestead farm) to the grantees, after the death of the father, and to their heirs. The covenant of

warranty is to the grantees and their heirs forever. Mindart Farlee died in 1845, having first made and published his last will and testament, and thereby devised the premises in question to the defendant his widow, and after her death to his two sons, the lessor and Anthony. The will was not however proved, so as to pass real estate.

On the trial of the cause, the plaintiff's counsel offered the deed in evidence as a deed to the lessor, and at the same time proposed to shew that it had been altered since the execution and delivery thereof by the insertion of the name of Anthony as one of the grantees, without the knowledge or consent of the lessor.    To the admission of this evidence the defendant's counsel objected; the objection was overruled and the evidence admitted.

The main question involved in the case was the validity of the deed, and its delivery to the lessor of the plaintiff.    The plaintiff's counsel insists that there is abundant evidence shewing that it was delivered originally to the lessor in severalty. This is denied by the defendant, who insisted that it was never out of the possession or control of the testator until it was surreptitiously taken by the lessor.    The lessor of the plaintiff was born on the 17th of April, 1807, and was about eleven years of age at the time of the execution, and alleged delivery of the deed to him.    The testator's first wife died in the spring of 1832.    He married the present defendant in the month of October, 1833.    At the date of the deed the lessor lived with his father, and continued to reside with him until after his second marriage.    There was no direct evidence of the actual delivery of the deed at the time of its execution, other than the certificate of the officer before whom it was acknowledged.    The subscribing witnesses, it was proved, had been dead several years. The plaintiff produced a number of witnesses who testified to admissions by the testator made about the time of the date of the deed, that he had given a deed for the premises to the lessor.    Joseph Craig testified that about the time of the date of the deed, in a conversation with the testator, he told the witness he was about making a division of his property among his three children.    He said he had made deeds to his son-in-law,

Archibald Kennedy, and to his son Anthony, for tracts of land in the Lake country, and had made a deed for the homestead to the lessor, his youngest child. This witness in his examination in chief says, the testator told him he had given all these premises to this son, and that the deed in the first place went into the boy's possession. That he had given him the deed and told him to take care of it. On his cross-examination, he says the testator told him he had given the boy a deed for the homestead, and that he did not remember anything else about it. By several other witnesses it was shewn that the testator admitted he had given the lessor a deed for the homestead, but that he was not to have it until after his (the testator's) death. Some of them testified that the testator said he had given him the farm to make him equal with Anthony, to whom he had advanced money, and his daughter, Mrs. Kennedy, to whom he had given a farm.

The defendant offered in evidence the deposition of Mrs. Jane Stout, an aged witness, (taken under the statute), who testified that soon after the date of the deed, the testator in her presence, deposited with her husband for safe-keeping, two deeds; one of them was for his homestead farm to the lessor, with directions to let no one have them until called for by him. That they were deposited in a desk in the garret where her husband kept his papers. That the testator called for them about eleven or twelve years ago, and that the deed to the lessor could not be found. Before the testator called for the deed the lessor had stayed a night at the house of the witness, and slept in the garret where the desk was. It was not locked. He had before then inquired of the witness whether the deed to him was there, and was told that it was. Afterwards, in a conversation with the witness, the lessor told her she had given him the deed, which she denied. The whole of this evidence was overruled by the judge at the trial, when first offered, but afterwards, that part of it which related to the conversation between the witness and the lessor was admitted.

The defendant produced a witness who was present at an interview between the lessor and his father in 1837, on the subject of a deed for the homestead farm, and offered to shew by

him what passed between the parties at the time respecting the delivery of the deed, and also what was said by the father to the lessor in relation to its delivery, and that the father charged him with having obtained it improperly or by stealth. The court overruled all this evidence except so much thereof as related to *the original delivery of the deed, and to the time of delivery as manifested by its date.* The defendant then gave in evidence by Mrs. Kennedy, the testator's daughter, a conversation she had with the lessor after their mother's death, about the homestead farm. She testified that the lessor seemed to be uneasy, and said his father was offering the farm to any young woman that would marry him. He said he would certainly give it to her. That the property would be all gone and nothing left for the children. At this time he did not pretend that the farm belonged to him, or that his father had given him a deed for it. Afterwards, in the fall of the same year, and before his father's marriage, she saw the lessor again, when he appeared more cheerful, and said he had procured something from Stout's, which would prevent his father giving the farm to a young woman. He declined telling the witness how he got the deed, but boasted that he had got it, and his father could not now waste the property, or give it to a girl. The defendant proved by a son of old Mr. Stout, that upwards of twenty years ago he was present when Mindart Farlee delivered the deed in question to witness' father, and offered to show by the witness, the instructions given by Mr. Farlee to his father respecting the disposition of the deed, viz : that it was to be safely kept by Mr. Stout until called for by Mr. Farlee, and to be delivered to no one except to him. This testimony was also overruled by the court as incompetent and illegal.

After the parties had rested, the defendant's counsel called upon the court to charge the jury 1st, That if a deed is found in the possession of the grantee, then, and not otherwise, the mere execution is presumptive evidence of the delivery of the deed.

2. That the presumption, arising from the mere execution, is effectually overcome by showing that the grantee came wrongfully into possession of the deed, and

3. Unless the grantor part with all control and dominion over the deed, there is no delivery. The court refused so to instruct the jury. A verdict having been rendered for the plaintiff, a rule was granted to shew cause why it should not be set aside.

The judge was clearly right in admitting the deed in evidence. It was offered not as a deed to Anthony and the lessor, but as a deed to the latter in severalty. Upon inspection, it is apparent it was first made to the lessor, and that the name, _Anthony M. Farlee_, has been since inserted. If there were no other evidence in respect to the alteration than that furnished by an examination of the deed itself, that was sufficient to permit it to go the jury for their consideration. But in addition to the evidence furnished by the deed itself, there is the testimony of the Stout family, who saw it soon after its execution, and who testify that it was a deed to the lessor. The testator spoke of it to others as a deed to him. From the nature of the alteration, it was not incumbent upon the plaintiff to explain it. As his interest was not advanced, but diminished by the alteration, the law does not impose upon him the burthen of accounting for it. _Bailey_ v. _Taylor_, 11 _Conn. Rep._ 531.

The burthen of the case, however, is upon the delivery of the deed. Was there such clear and abundant evidence of its delivery as to justify the court in ruling out the evidence of Mrs. Jane Stout and her son as to the deposit of the deed with old Mr. Stout by Mr. Farlee; the instructions given by the latter at the time; the cirstumstances detailed by them going to show that the lessor must have taken it from the desk where it was placed; and the evidence of what was said by the testator and the lessor at the interview between them in 1837 respecting the delivery of the deed and the manner the lessor possessed himself of it? As I before remarked, there is no direct evidence by witnesses, of the actual delivery of the deed. The attesting witnesses have long since died. The plaintiff's counsel insists that the possession of the deed by the lessor, with the certificate of acknowledgment thereof by the grantor, taken in connection with the admissions made by the testator in his lifetime, that he had given to the lessor a deed for the premises, is evidence of an absolute delivery. Assuming that there is

conclusive proof of the fact, he contends that the declarations of the grantor in relation to the deed and its safe-keeping, made after the date of the certificate of acknowledgment, are not competent evidence.

A formal delivery of the deed is not necessary to give it effect —a delivery may be effected without an actual handing over by the grantor to the grantee or to a person in trust for him. A deed may be delivered by words, without acts, or by acts without words ; or by both acts and words. *Shep. Touchstone* 58— 4 *Halst.* 153. As evidence of the delivery in this case, the plaintiff relies in the first place upon the certificate of the officer made under the statute, that the grantor signed sealed and delivered the deed as his voluntary act, &c. This, however, is not conclusive evidence of a delivery. It is presumptive, or it may be regarded in the language of some other cases, as cogent evidence of the fact, to be rebutted by proper evidence showing there was really no delivery. Under certain circumstances a deed will be considered as complete after a formal execution, although it be left in the hands of the grantor, as in *Saugham* v. *Wood,* 15 *Wendell* 545. In that case the deed was in trust for the benefit of the grantor's children, executed and acknowledged by him and the trustees. The grantor was to enjoy the premises during his life, to enable him to support and educate his children. The deed was recorded, and after the death of the grantor it was found among his private papers. The plaintiff, as the widow of the grantor, claimed her dower in the premises. The Commissioner testified that at the request of the grantor he took the deed to the house of the plaintiff before her marriage with the grantor. It was then read, and the parties severally acknowledged it. He had no recollection of any formal delivery. Nelson, Ch. J., says : " No one can doubt from the account of the execution of the deed given by the Commissioner, in connection with the previous preparation of it at the instance of Saugham, that it was the understanding and intent of all parties at the time of the execution and acknowledgment, that it was delivered, or in other words that the family settlement was complete." The doctrine is properly stated in 4 *Kent*

*Com.* 455–6, "If both parties be present, and the usual formalities of execution take place, and the contract is to all appearance consummated without any condition or qualification annexed, it is a complete and valid deed, notwithstanding it be left in the custody of the grantor." See also *Folly* v. *Vantuyl*, 4 *Halst.* 153. In this case there is no evidence that the grantee or any person in his behalf, was present at the time of the execution of the deed, nor are we informed what the understanding of the parties was with regard to its delivery. There are no circumstances proved, aside from the certificate of acknowledgment, showing a delivery. There is not only an absence of any proof of the kind, but there is evidence in a letter written by the lessor to his brother Anthony, in Sept. 1832, after his mother's death, and fourteen years after the date of the deed, that he did not then claim the farm, or pretend that his father had ever executed to him a deed for it. In the letter referred to he says : " *Our father has forsaken us, and he is determined to get married, and it appears that he don't care of what becomes of the property. I have been trying to keep the debts down and get them paid, and try to fix up the farm, but I cannot do any thing with him. I have partly concluded to give it up and let it all go to destruction.*" In confirmation of this, is the evidence of his sister, Mrs. Kennedy, who says that after their mother's death she conversed with him about the homestead farm. He said his father was offering it to any young woman that would marry him. That he would certainly give it to her. That the property would be all wasted and nothing left for the children. He never pretended to her that his father had given him a deed for the place. It was not until after he had been to Stout's as testified to by Mrs. Stout and her children, and by Mrs. Kennedy, that he set up any claim to the farm under the deed.

If the acknowledgment of the deed by the grantor be not conclusive, but only presumptive or cogent evidence of a delivery, then it appears to me, the evidence offered by the defendant of the possession of the deed by the grantor, the disposition he made of it, and his instructions in regard to its safe keeping, long before the lessor set up any claim to the farm under the

deed, was proper for the consideration of the jury as raising a counter presumption. It would have been competent for the defendant to have proved that at the time of the execution of the deed the grantee delivered it to a third person as an escrow or upon any other contingency. If so, I can see no good reason for rejecting evidence of what he did with it before an actual delivery, and while he yet had the entire control of it.

The plaintiffs counsel contends that there is a further and stronger presumption of a delivery of the deed from the fact that it was in the hands of the grantee. When a deed properly executed is found in the hands of the grantee, the law finding it in its proper custody, will presume a due delivery, and that the grantee came into possession of it lawfully. *Lessee of Licards* v. *Davis and al.* 6 *Peters Rep.* 124. As it is only presumptive evidence, it is certainly competent for the grantor to overcome that presumption by showing that the grantee became possessed of it by fraud. The only question then is, whether the evidence offered by the defendant and rejected by the court was competent for that purpose. I think it was. There is no satisfactory evidence that the grantor was not lawfully in possession of the deed at the time he placed it in the hands of Mr. Stout for safe keeping. There is evidence in the letter written by the lessor to his brother Anthony, and in the testimony of his sister, Mrs. Kennedy, that for several years after he obtained his majority, the lessor did not set up any claim to the premises, or pretend to have a deed for it from his father. Now if the evidence in the case rendered the fact of the delivery of the deed at the time of its execution doubtful, and that it did I have no question, then the evidence rejected by the court was competent. What the testator said about the safe keeping of the deed, was proper evidence as part of the *res gestæ*, and as overcoming the presumption which the plaintiff claims from the possession of the deed.

The plaintiff objects to this evidence upon the ground that the declarations of the grantor ought not to be allowed to invalidate his own deed. This objection rests upon the assumption that there is not only proof of the execution of the deed, but

conclusive evidence of a due delivery thereof. Now there is no such conclusive evidence in the case.

CARPENTER, J. concurred.

RANDOLPH, J. On the trial of this cause at the Hunterdon Circuit a verdict was rendered for the plaintiff, which the defendant now seeks to set aside on the ground of several exceptions taken to the ruling and charge of the judge at the trial.

The first exceptions are to the admission in evidence of two deeds under which the lessor of the plaintiff claims title to the premises. The deeds are from Mindart Farlee, decd., the father of the plaintiff, to his son Francis A. Farlee; one is dated Oct. 23, 1830, purporting to have been made in consideration of one dollar, and for natural love and affection, and the better maintenance of his said son, and to convey amongst other property, twenty acres of the disputed premises. The other is from and to the same persons, and bears date in August, 1818—and conveys something over two hundred and thirty-five acres, being the residue of the farm in dispute. The objection urged to the admission of these deeds is on account of erasures appearing on the face of the deeds themselves. The first deed appears to have been originally drawn to the grantee his heirs and assigns, and to have been altered by erasing the word *assigns*, and interlining the word *bodily* before the word heirs, in the several parts of the deed where these words occur—no note of the time of the alteration appearing on the face of the deed. The second deed has the word assigns erased, and the name of Anthony M. Farlee interlined as a joint grantee with the plaintiff, which was not covered by the note at the bottom of the deed, and which the plaintiff in offering the deed in evidence, proposed subsequently to prove had been inserted after the deed was executed, without his the plaintiffs knowledge or consent. Whether the alteration was before or after the execution is a question for a jury; if it be against the interest of the grantee, in the absence of evidence to the contrary, the presumption is that it was done at or before the execution, or at all events not by the grantee or

at his instance, and if by a stranger will not affect his title.— *Cumberland Bank* v. *Hall*, 1 *Halst.* 215—3 *Phil. Ev.* (by Cowen) 1317—*Shep. Touchstone,* 68–9. Whatever might be the effect of the alterations on the estate of the grantee, they cannot destroy the deeds. 2 *Burr.* 191–6—9 *Cranch*, 37. The deeds having been proved, they were competent to be used in evidence, leaving the alterations to be explained by future evidence, or be judged of by the jury.

The next objection embraces several exceptions taken by the defendant to the overruling of evidence offered by her for the purpose of shewing that the deed of 1818 had never been delivered by the grantor. 1. A part of the deposition of Jane Stout going to shew that the deed was in the custody of her husband long after the time it bears date, and that the lessor of the plaintiff slept in the room where it was kept, and stole or took the deed away. 2. The testimony of Joseph Magie, offered to prove a conversation in 1837, between grantor and grantee, and that the former charged the latter with stealing the deed from Stout, sometime after the period of its date. 3. The declarations and acts of the grantor many years after the period of the date of the deed, going to shew that he had never delivered the same, and also the instructions given by grantor to Mr. Stout the depository of the deed, that the same should never be delivered to any one except himself. It appears from the state of the case, that at the date of the deed the grantor was a minor, and that the deed sometime after that period was placed in the hands of Mr. Stout for safe keeping, where it remained until the plaintiff in some way obtained possession of it a few years before the suit was brought, and whilst the grantor was still living. Whether the testimony rejected was competent to go to the jury, depends upon the character of the issue, which appears to have been the delivery or non delivery of the deed. Had the plaintiff simply rested his case upon the production of the deed, with its acknowledgment or proof of execution thereon, and the fact of its being in his possession, then any thing which could have rebutted that possession as being a delivery from the grantor, would have been legal evidence, as tending to overrun the presumption arising from the plaintiff's case—

but the plaintiff sets up an actual legal delivery to him at the time the deed bears date and was executed, and disclaims a delivery at any other time, and in accordance therewith he produces a large number of witnesses, to prove that the deed at the time it bears date was actually signed, sealed and acknowledged by the grantor, and delivered by him into the hands and custody of the grantee, then a minor of some nine or ten years of age; that afterwards the grantor himself took the deed and kept it in his own custody for some time, and subsequently placed it in the hands of Stout to preserve in safety the interests of the grantee, fearing that some person might destroy the deed. Also the acts and declarations of the grantor, going to show that he had never given or delivered the deed to his son Asbury, and that he was perfectly satisfied that it should be so for more than twenty years, and until after a change occurred in the grantor's family. The deed was of little use to the grantee during the life time of the grantor, as the estate conveyed was subject to his life-estate, which explains why it was so long out of the possession of the grantee. All the plaintiff's evidence put to the jury the question of delivery in 1818, at the time of the execution, and at no other time; whether it was so delivered, was a question for the jury to determine under the direction of the court; to rebut this evidence the defendant proposes to shew that after more than twenty years had elapsed from the time of the alleged delivery, the plaintiff stole the deed from the custody of Stout, and that the acts and declarations of the grantor then went to show that he never had delivered the deed. If a delivery took place in 1818, it was of no consequence how the plaintiff came in possession of it twenty years afterwards, or whether he ever came into possession of it after that period; provided he could prove the contents and the delivery of the deed; and so if the deed had been lost or destroyed, he must recover upon the strength of his alleged delivery at the time of the execution, or not at all. The estate was then vested in him, or it never was, and he must recover upon that delivery or fail in the suit; and it is no answer to say, why no delivery took place in 1818, because in 1840, when you got possession of it, there was no delivery, but you obtained it by fraud or by theft. Such

evidence was aside of the issue, and calculated to prejudice the jury, and mislead them. from the true point of controversy, and was properly rejected.

As to the subsequent acts and declarations of the grantor, not coming under the head of *res gestœ*, as forming part of the transactions proved by the plaintiff, the rule is too plain and too well settled to require discussion or the citing of authorities, that whilst the declarations and acts of the grantor are evidence in support of his deed, they cannot be received to destroy it, especially so after the acquiescence of the grantor himself for a number of years—the evidence coming under this head could not have been legally received.

If my opinion be correct on the foregoing points, then it follows that the exceptions taken to the charge, or rather to the refusal to charge as desired, must also be incorrect. 1. That possession and execution of the deed was only presumptive evidence of delivery, was an abstract proposition not within the case. 2. And the same may be said of the second, that such presumption may be overcome by shewing that grantee came wrongfully into possession of the deed. 3. Unless grantee parts with all control of the deed, there is no delivery, no matter when the wrongful possession was obtained—the first part is found in the charge, and the second was not in the case, and was improperly connected with the first, implying that the only delivery was a possession wrongfully obtained.

Taking the whole case together, and from a careful examination of it, and of the points urged and authorities on the subject, I am unable to discover any error in the proceedings, and think therefore that the rule should be discharged.

New trial granted, with costs to abide the event of the suit.

CITED *in Hunt* v. *Gray*, 6 *Vr.* 230; *Cannon* v *Cannon*, 11 *C. E. Gr.* 320.