Bartley, J.
It is insisted on the part of the plaintiff in error that the district court erred in reversing the order of the court of common pleas sotting aside the judgment taken by confession upon the following grounds, to wit:
1. That the setting aside of the judgment in the common pleas was a more matter of discretion with that court.
2. That both the bill and the warrant of attorney to confess judgment had been invalidated by the erasure of the name of H. Cowles & Co., without the consent of Huntington & McIntyre.
3. That the judgment taken was not in strict conformity to the power to make, the confession.
I. If the order setting aside the judgment in the common pleas rested in the discretion of the court, it was not subject to reversal on petition in error. The court of common pleas has ample control over its own orders and judgments during the term at which they are rendered, and the power to vacate or modify them in its discretion. But this discretion ends with the term, and no such discretion exists at a subsequent term of the court. And the power of the court to set aside or vacate its judgments, subsequent to the-judgment term, is governed by settled principles to which the action of the court must conform, and for a departure from which any judgment ©r order may be subject to be reviewed and reversed on proceedings in error.
448] *It is well settled in this state that a judgment may be vacated or set aside on motion, at a term subsequent to the judgment term, for irregularity or improper conduct in procuring it to be entered. And this has become one of the accustomed and settled remedies for relief against judgments wrongfully obtained, where1 *449 the impropriety or irregularity has not been superinduced by the fault or negligence of the judgment debtor. McKee v. The Bank of Mount Pleasant, 7 Ohio, 188.
The order of the common pleas, setting aside the judgment under consideration in this case, was therefore subject to reversal on petition in error in the district court, if proper ground existed for such proceeding.
II. Was the instrument, on which the judgment was taken, vitiated by the erasure of the name of H. Cowles & Co.? This paper is as follows:
“$1,000. Columbus, O., November 13, 1851.
“ Thirty days after date, pay to the order of W. M. Finch & Co., at the office of J. Stevenson & Co., the'sum of one thousand dollars, for value received — and we dispense with the proof of demand of payment, protest, and notice of non-payment of the above bill of exchange, and authorize any attorney at law to appear for us and in our names, at anj^ time after the maturity of the same, in any court of record of the State of Ohio, and waive the issue and service of process, and confess judgment in favor of the payee thereof, for the amount of the bill and interest, and the damages allowed by law on protested bills of exchange, drawn on any person, or persons, or body corporate, within the jurisdiction of the United States and without the jurisdiction of the State of Ohio, together with the costs of suit — to release all error and writs of error in law or equity.
“Witness our hands and seals this 13th day of November, A. d. 1851.
(Signed,) “ Huntington & McIntyre.
SEAL.
“ Thos. McIntyre.
"seal."
“H. Cowles & Co. (erased.)
“seal."
“To J. Stevenson & Co., Portsmouth, Ohio.”
It appears that Huntington & McIntyre were principals on this instrument; that the name of the firm of Huntington & McIntyre,, which was composed of Horace F. Huntington and Thomas McIntyre, was written by Huntington, below which McIntyre placed his individual signature; and that the name of H. Cowles & Co. was placed on the paper *Iast, and as surety for Huntington & [449 McIntyre. After the maturity of the paper, when Cowles & Co. were urged to pay the debt, they obtained some delay for themselves by an agreement to stay execution, on giving a separate cognovit, signed by Cowles and Whiting, individually. And when this separate cognovit was given for the debt, the name of H. *450 Cowles & Co. was erased from the first paper at the request of Cowles, and with the consent of the creditor; but it does not appear that Huntington & McIntyre, at that time, either knew of, or assented to the erasure. How could this erasure invalidate the instrument? There was clearly no fraud in the transaction. And it would be difficult to perceive how Huntington & McIntyre could be prejudiced bj^ being relieved of the security on their paper by the consent of the holder.
It is true, that it appears to be a settled rule of law, that any material alteration in a deed, promissory note, or bill of exchange, beneficial to the holder, or pai'ty making the alteration, will vitiate the instrument. This doctrine, however, is founded on a presumption of fraud; and the alteration must be such as to effect some change in the meaning or legal operation of the instrument. And the adjudications have not been uniform on the point, whether the burden of explaining an alteration apparent on an instrument devolved upon the holder, or the party sought to be charged. The ¡rule, however, established by the-greater weight of authority, both iin England and in this country, appears to be, that where the alter¡ation is suspicious and beneficial to the holder of the paper, the party ■.seeking to enforce it is required to explain it before he can recover; but where the alteration is not peculiarly suspicious and beneficial to the holder, the alteration will be presumed to have been made .either before the execution of the paper or by the consent of the parties. 11 Conn. 531; 2 Barb. Ch. 119; 7 Barb. S. C. 564.
It appears, however, that in the case before us, the circumstances •450] explanatory of the alteration, were fully before the *court of -common pleas on the motion to set aside the judgment, and that the "erasure of the name of the security on the paper was not beneficial do the holder, and that it was in fact his permission, at the request -of the security. And as the principals could not be prejudiced by .taking the name of their security from their paper, under the circeumstances, and could not be allowed to object to it, wo are unanimous in the opinion that the obligation upon which the judgment was taken was not invalidated by the erasure. The operation of a rule should never be extended beyond the reason of it. When all ¡presumption of fraud was repelled by explanatory evidence, and it was shown that the alteration was made by the consent of the only parties to the instrument whose interests could be in any manner ¡affected by it, the reason for the application of the rule, that a writ *451 ten contract may be vitiated by an alteration, was wholly removed. The liability of a surety is not an independent or joint liability, but accessory to that of principal; and the beneficiary of his obligation is the creditor and not the principal. Where, therefore, the creditor allows the surety on an instrument to be discharged, the principal, from the very nature of the relation between him and the surety, would not be allowed to interpose an objection. For, so far as he is concerned, the alteration is wholly immaterial. We'are sustained in this view by the adjudication in the case of Broughton v. West, 8 G-a. 248, whore it was held that the erasure of the name of a surety on a promissory note, by agreement between the surety and the payee, is not such an alteration as will invalidate the note as against the principal.
III. It is insisted, however, on the part of the defendants in error, that if the alteration did not invalidate the obligation of the principals to the instrument, yet, that the power to take the judgment by confession, was- a power to take a joint judgment against the principals and surety; and that as a power of this kind must be strictly pursued, the erasure of the name of the surety from the instrument, which ^embodied both the obligation and the [451 warrant of attorney, destroyed the power to take the judgment by confession. It is not necessary to stop here to inquire whether there was anything essential in the nature, or express in the terms of the power, requiring a joint judgment against the principals and surety on this instrument. It is a sufficient answer to this objection, to say, that on a motion to set aside a judgment, the court exercises an equitable jurisdiction, and will not vacate a judgment against the manifest right and justice of the case. It appeared on this motion in the court of common pleas, that the defendants in error had given the holder of the instrument a power to take a judgment against them by confession. And even if, by its terms, it were an authority to take a joint judgment against them and their surety, yet they were in nowise prejudiced by the judgment having been taken against them alone without the surety. A power to take a judgment against a principal and his surety, although by its terms authorizing a joint judgment, would seem, upon sound reason, to be authority to take a judgment against the principal alone. The provision authorizing a joint judgment, might be insisted on, and enforced by the holder of the power, but as' far as the principal to the instrument is concerned, it is wholly immaterial. *452 What face did the defendants in error in this ease present on their motion to set aside this judgment in a court exercising an equitable jurisdiction in such proceeding? They did not deny that H. Cowles & Co. was a mere surety on their paper. And although the name of Cowles & Co. had been erased from the instrument, yet they could not even complain that the surety had been discharged from the payment of their debt, for a separate cognovit had been given by the surety for the same liability at the time of the erasure. They could not complain that any advantage had been given to their surety over them, because a judgment was authorized against the surety, and afterward actually taken on the same day on which the judgment had been entered up against themselves. And they could not complain that efforts were made to make them pay their 452] own debt before *the enforcement of the liability against their surety, because their surety had, in fact, been previously compelled to pay the debt.
Rut it is insisted that even if they were in nowise prejudiced, yet the power to take the judgment by confession, was authority to take a joint judgment, and that it was not strictly pursued. It has been frequently adjudged, that a warrant of attorney to take a judgment by confession, by one of several partners signing the partnership name, thereby expressly showing an intention to authorize a joint judgment against several persons equally liable, would be a good power to take a judgment against the person individually giving the warrant, although not binding on the other members of the firm. And there are numerous instances to be found in the reported decisions, both in England and in this country, where a power to take a joint judgment by confession by several persons, but which was either void or voidable as to part of the persons signing it, was held good as to the other parties. Where the relation of principal and surety exists, the obligation of the latter of which is merely accessory to that of the principal, and is governed by equitable principles, there would seem to be no good and substantial reason that would enable a principal to avoid the power because the creditor did not enforce it jointly with his surety. It would seem that a power to take a judgment by confession, in the hands of a creditor, against a principal and surety jointly, would be a good authority to take a judgment against the principal alone.
And as the court of common pleas on the motion to set aside the judgment, exercised an equitable jurisdiction, and should not have *453 vacated the judgment against the right and justice of the case, the majority of this court are clear in the opinion, that the common pleas erred in this respect, and that the ruling of the district court reversing the order of the common pleas, was correct.

The judgment of district court affirmed.

Ranney and Warden, JJ., dissented.